will now begin recording. May it please the court, my name is Kevin Martin and I am the attorney for Eddie Gill who is the plaintiff and appellant. Also joining me is co-counsel Drew Deviney. On November 9th, 2015 and June 7th, 2016, the United States District Court for the Eastern the City of Milwaukee, six of its police detectives with the Milwaukee Police Department and Chief Edward Flynn, pursuant to the City's 12C motions. This case is about an 18-year-old developmentally disabled, mentally retarded man whose constitutional right to liberty was deprived by the City of Milwaukee and six of its detectives who were acting under the color of state law. The facts of this case begin on February 3rd of 2013. There was a shooting outside of a club in downtown Milwaukee that resulted in the death of a man by the name of Jordan Crawley. Nine days had passed. The Milwaukee Police Department was investigating the case and by this time they had no witnesses that identified Eddie Gill as the shooter. They had no witness stating that the shooter matched the description of Eddie Gill. They had witness reports that someone other than Eddie Gill was the suspected shooter. They had no evidence putting a gun or any weapon in the hands of Eddie Gill. They had no video showing Eddie Gill of committing any crime. The only evidence that they had was that a surveillance video of a nearby gas station showed that Eddie Gill was in the vicinity. At the request of the Milwaukee Police Department, Eddie Gill voluntarily produced himself. To understand the severity of what happens next, we must go back in time to 2007. In 2007, Eddie Gill was arrested by the Milwaukee Police Department. Through proceedings, the Milwaukee Police Department learned that Eddie Gill was incompetent to stand trial. He functioned at the borderline mentally retarded range. He had a psych eval that revealed mild to moderate mental retardation. He was diagnosed by psychiatrists at the Milwaukee County Mental Health Complex with mental retardation and a warning that his IQ of 70 was an overestimation of his formal reasoning and ability to articulate. He had difficulty with memory. He had difficulty with verbal articulation. He had a low frustration tolerance. With that backdrop, we now go back to the future and bring us to February 12, 2013 when Eddie Gill voluntarily produced himself to the Milwaukee Police Department. Adding to the facts known to the Milwaukee Police Department in 2007, when Eddie Gill produced himself in 2013, his mother called and spoke with Detective Peterson, one of the detectives on the case, and warned them, informed them that her son was cognitively vulnerable. Over the next three days, for over 40 hours, Eddie Gill was isolated and interrogated on four separate occasions. Eddie Gill invoked his right to counsel three times, and each time the Milwaukee Police Department did not scrupulously honor his requests. He was not allowed to make any phone calls. During the interrogation, Eddie Gill professed his innocence 142 times. Eddie told the detectives that he had comprehension problems. Despite this, he was subjected to interrogation techniques that included social isolation, confrontation, theme development, minimization, the presentation of false evidence, leading questions, feeding information to Eddie Gill that he didn't otherwise know. Which of these, in your view, which of these things violates the Constitution? The, it is a, we have, the ruling, the reason you lost was a finding of qualified immunity. Right? And the Supreme Court's question is, has a right been made concrete so that any reasonable officer would understand it? Now, I get worried when a lawyer has a list of things that happened, but doesn't cite a decision that clearly establishes that each of these things violates the Constitution. So this is your chance. Sure. The first violation of the Constitution was the Fifth Amendment Constitution, excuse me, Mr. Gill's Fifth Amendment constitutional right against coherence in interrogation. No, no, no. Look, that's at such a high level of generality that it doesn't help. Just on Monday, the Supreme Court summarily reversed a court of appeals that had stated the right at a high level of generality and said it has to be made concrete. So let's take your list. What case establishes that theme development violates the Constitution? There is no single case that I can cite to this court. Well, then, then you've got a problem because the Supreme Court says if you can't, then the defendant gets qualified immunity. What the Supreme Court has said is that we must take a look at the totality of the circumstances. No, it's rejected that as an immunity standard. That's just the trap of stating things at a high level of generality and waving your hands and ignoring the need for some comparable precedent. That's what got the court of appeals reversed summarily two days ago. Are there cases that you're relying on that make this right concrete so that a reasonable officer would know that what he was doing was wrong? That's what the Supreme Court wants. The issue with that, and I am not familiar with the case that was released two days ago, and if given the opportunity, I would certainly welcome to issue a supplemental brief on that. But with regard to a specific case, what we have to do, and I understand that you have, Judge Easterbrook, that you have rejected that, the totality of the circumstances. Look, we've got marching orders from our superiors, and we're in a hierarchical judiciary, and the justices say the right has to be made concrete where the defendant gets qualified immunity. So that's why I'm asking, where is this right made concrete? The first case that I can cite where the right is made concrete is in the, when we look at the Brady claim, under the fifth- There's no conceivable Brady claim here because there was no trial. But- And this court has held that unless the defendant not only goes to trial but is convicted, there is no Brady claim. That's just a holding of Saunders-El. With all due respect, this court held in Kyrell versus Adderin, 821 Fed 3rd, 823- I wish you would get back to my question, which was, what is the thing that concretely establishes, what case should I read that concretely establishes that, say, theme development, or take anything else on your list, violates the Constitution? The United States Supreme Court has long held that cohesive interrogation technique- Yes, and that's stating the right at a high level of generality, which the Supreme Court tells us does not overcome an immunity defense. That's why I'm asking, right, this is your opportunity. Tell me where it's made concrete. I'll go read it. I'm not against your claim. I just need to apply the law the Supreme Court tells us we have to apply. I appreciate that, and I wish that I could cite this court with a case which states that, for example, social isolation in and of itself violates the constitutional right, or confrontation in and of itself violates the constitutional right. But there is no such case. But what the case law does establish is that cohesive interrogation that produces a false confession can violate a constitutional right. And in order to determine whether there was a cohesive interrogation, we must take a look at all of the circumstances, including the characteristics of the plaintiff, the accused, along with the behavior of the detectives. Now, if I were to say, well, this detective used theme development and an able-minded man, would that violate a constitutional right? No, but if I were to say this case involves several interrogation techniques that were used on a developmentally disabled man that resulted in a coherent confession, that is a violation of his Fifth Amendment constitutional right. That's also a violation of his 14th Amendment constitutional right. We're past the days when the state can bring in a person into an interrogation room, subject him to hours on end of interrogation, only to get a confession. The state is charged with the obligation of producing its own evidence. If we were to look for an individual case, I think we would end up finding ourselves running into an abyss, a never-ending abyss of case law. But we do know that cohesive interrogation, or the right against cohesive interrogation, is a clearly established right. That's something that's known in the case law, and that's also something that's known by the Milwaukee Police Department. We also know that, with regard to the Brady claim, and to come back, Judge Easterbrook, to your question earlier, about that the evidence was not used at trial. In the Kyrell case that I had cited earlier, this court said it doesn't have to be used at trial. What this court stated- Do you have any response to the holding of Saunders-Ell? Unless there's a specific question with, was Saunders-Ell the decision that was released two days ago? No. Saunders-Ell was released about two years ago by this court. Saunders-Ell against Rody holds that there cannot be any Brady claim unless there was a criminal trial and the defendant was found guilty. That's the hold. In Kyrell, this court- Do you have any response to Saunders-Ell? Yes, the response is what this court wrote in Kyrell. All right, in other words, you haven't read Saunders-Ell, and you're not prepared to comment on it. That's a fine answer, because your adversary didn't rely on it. So I understand that, but it is the most recent controlling precedent from this court. I believe that the 2016 case of Kyrell is more recent than that, where this court stated, as we explained in Armstrong, however, the key to a civil Brady claim is not a conviction or acquittal, but a deprivation of liberty. Under other circumstances, such as where an accused is held in pretrial custody before acquittal or dismissal, a failure to disclose exculpatory evidence may cause the type of deprivation of liberty required for a Brady claim, even if the case ends without a trial or conviction. And that's citing back to the Armstrong case. And that's from 2016, and that is the case that we are relying on to support our Brady claim. I don't want to lose sight of the fact that we are at the pleadings phase of this case, and that dismissal on the pleadings is disfavored, because it hasn't allowed the parties the opportunity to more fully develop their cases. It hasn't allowed the parties the opportunity for, perhaps, to get the, excuse me, perhaps to develop the facts that are necessary, Judge Easterbrook, to answer your questions. With respect to the cohesive interrogation claim, the district court didn't address Mr. Gill's Fifth Amendment cohesive interrogation claim. What it only addressed was whether the interrogation shot the conscience of the court. That, however, is not a Fifth Amendment requirement. That's a requirement under the 14th Amendment. In its later order, the district court stated that- I must say this loses me. This is a 14th Amendment claim. I mean, that's, the 14th Amendment is the only thing applicable to the states. Some of the substantive requirements of other amendments are applied through the due process clause of the 14th. But this is inescapably a 14th Amendment case. This is a Fifth Amendment case as applied to the states through the 14th Amendment, and it also is an independent 14th Amendment claim as well. With respect to the Fifth Amendment claim, as applied to the states through the 14th Amendment, the district court ruled that the confession was never introduced at trial. However, this court stated that in Sonneberger in 2006, that earlier courtroom uses of coherence testimony, including pretrial proceedings, provide a basis for the 1983 claim, arising from the Fifth Amendment. With respect to the 14th Amendment claim, that has to do with whether the conduct that was used by the police is, the police is conscience shocking. I again come back to the fact that we are at the pleadings phase of this case, and that discovery has not taken place. Additional facts as to the conscious shocking elements of the police conduct will be developed. However, Eddie Gill has pleaded enough facts to get beyond the pleadings phase, because he has stated a claim upon which relief can be granted under the 14th claim, the Brady claims, and the various other 1983 claims that require an underlying constitutional deprivation. And I see that my red light is on. Thank you. Thank you, Mr. Martin. Mr. Spankowitz. May it please the court. Assistant City Attorney Jan Smokowitz for the defendants' appellees. In this case, good morning, Your Honor. A little bit out of order here in terms of the presentation that I had anticipated making, but I wanted to directly address one of the things, and it leads perhaps smoothly into the other points that I wanted to make today. Mr. Martin raised the issue that theme development, for example, one of the purported misdeeds of the detectives in this case, would not be a violation of a normal thinking person's rights if that normal thinking person had been arrested, but that it was a violation of Eddie Gill's rights to use that kind of technique in questioning him. The truth of the matter is here that that opens the plaintiff's real case here, which is questioning Eddie Gill using any kind of technique, lengthy interrogations, lengthy periods of time questioning him, questioning him over several days of time, whether it's using some leading questions or intense questions, or continuing to question him even when he says, look, I'm innocent, those kinds of things are not, and we've cited all of the cases here indicating that, those kinds of things are not themselves deemed to be a violation of the Fifth Amendment as applied for a coercive interrogation claim, whether that's, obviously that's a 14th Amendment due process claim as Judge Easterbrook points out, with respect to the municipality and its employees. But the point is, at heart, this claim is nothing more than a claim that Eddie Gill was intellectually deficient, and therefore because of that, any kind of serious, discerning, lengthy, confrontational kind of questioning of him is inherently unconstitutional. And we submit, and that the district court correctly concluded that there's no case that says that, there's no case that would, and there's no case that would give to reasonable officers in this situation notice that the kind of questioning that they conducted here, when they asked him some questions the first day, and stopped the first day, when he said, I want to talk to a lawyer. And they stopped on the first day, and they took him away, and in the way of taking him back to his jail cell, apparently, he says to Detective Graham, but you know, I want to take a lie detector test. And that's when there's, unfortunately, a confusing exchange between them about, can you take a lie detector test now while you don't want to talk to us? We can't ask you questions if you don't want to talk to us. And you know, if you want to have a lawyer, you can't have a lawyer doing a lie detector test. That's not permitted. But they did stop questioning him that day, and only when he said to them, I want to take the lie detector test, did they come back after a night's sleep and do the lie detector test. And then after that, two other detectives questioned him that day. And then after another night's sleep, come back and the detective on the third day questions him again until there is a confession. The point is that with these circumstances, with breaks, with breaks for sleep, with breaks for food, with breaks for drinks, without any threats, without any violence, without any, and continuing to question him even after he says a number of times, I'm innocent, and suggestion that well, perhaps if you cooperate, there may be some leniency in this situation. The district attorney will certainly take that into account. The court will take that into account in all likelihood. All of those things are the circumstances that are pled factually in the complaint. And this is not an average complaint. It's got dozens of paragraphs of facts. In addition to that, it's got footnote citations to the record in the trial court, some of which were submitted on the motion to dismiss, I'm sorry, in this case. And those facts we submit establish that this was not a coercive interrogation or that at a minimum, the district court got it right that officers in these detective positions would not have believed that they were conducting a coercive, unconstitutionally coercive investigation. All this came down to is intellectual deficiency. And what is clear is that Duckworth says that alone is not enough to establish a claim. With respect to the separate claim under the due process clause of substantive due process claim of this being conscience shocking conduct. Once again, there's no clear cut definition here. There's no case that says these or very comparable circumstances constitute conscience shocking conduct of such a magnitude that the substantive due process clause is violated. Therefore, we submit the district court once again got it right in terms of dismissing that claim. The false arrest claim was properly dismissed because as the district court pointed out, even the circuit court said, there was probable cause for Mr. Gill's arrest. And with that comes an end to the false arrest claim. Even if there were subsequent charges of homicide, more serious charge of homicide after the arrest. Because there was no intervening release of Mr. Gill. I'm sorry. And with that, unless the court has any further questions here, I would end my presentation. Thank you, Mr. Milkovich. Mr. Martin, your time has expired, but you may have two minutes. Thank you. In quoting from the US Supreme Court in Dickerson versus the United States, the Supreme Court stated in implementing this bedrock constitutional value, our focus is on whether the defendant's will was overborne by the circumstances surrounding the giving of the confession. An inquiry that, quote, takes into consideration the totality of the surrounding circumstances, both the characteristics of the accused and the details of the interrogation. In order to qualify for, excuse me, in order to trigger qualified immunity, the first thing that this court must do is take the allegations in the light most favorable to the plaintiff and ask whether those amount to a violation of the plaintiff's rights. We've met that burden at the pleadings phase by showing the totality of the circumstances involving a developmentally disabled, mentally retarded man who was cohesively interrogated. Second, the rights have to be clearly established at the time of the alleged violation. The right to be free from a cohesive interrogation has been established through the United States Supreme Court as far back as 1860. The defendants in this case state that the complaint is not a usual complaint and that it is a very detailed complaint. And it is a very detailed complaint. The reason why the complaint was so detailed was so that we could survive a motion for dismissal on the pleadings to move this case into discovery to provide even more details. There are over 8,000 pages of documents that this case involves. And there is no way we can provide all of those documents or even reference to all of those documents at the pleadings phase. But at a minimum, have we stated that Eddie Gill's constitutional rights were violated? At a minimum, at the pleadings phase, we have done that. And this case should proceed into discovery. Just one question, Mr. Martin. Can we make much of a factual distinction? I know there's a pleading distinction between this and the Carroll case as far as the interrogation of a mentally challenged individual. We can absolutely make a factual distinction between this and the Carroll case. First off, in Carroll, the plaintiff in that case had a learning disability. In this case, Eddie Gill was developmentally disabled and mentally retarded. Second, in Carroll, the interrogation techniques were ordinary interrogation techniques. As alleged in this case, the interrogation tactics were cohesive tactics. Well, they're cohesive because of their duration, right? They're cohesive because those interrogation tactics cannot be used on a developmentally disabled man. The Reed Manual on Interrogation prohibits using these interrogation tactics on developmentally disabled people because it leads to a cohesive interrogation and a coheres confession. In Cairo, the plaintiff in that case participated fully in the interrogation. In this case, Eddie Gill professed his innocence more than 140 times and sobbed during the interrogation. In Cairo, the plaintiff testified that he was treated well by the police. In this case, when Mr. Gill was left alone, he was crying and kept saying under stress, I didn't do this. I didn't do this. In Cairo, he was detained for a few days. In Gill, excuse me, in this case, Mr. Gill was detained for 385 days. In Cairo, there was other evidence against him, including a victim identification. In this case, the only thing the Milwaukee Police Department had was a coheres confession. And perhaps the single most important factor of Cairo was that that case got through discovery. We're at the pleading space. I appreciate the pleadings difference. All right, thank you, Mr. Martin. Thank you. Thank you, judges. Thank you, your honor. Thanks to all counsel. Case is taken under advisement. The court will proceed with.